**No. 25-60618**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

**FIRST SERVICE BANK,**

Plaintiff–Appellee,

v.

**THOMAS L. SWAREK,**

Defendant–Appellant.

On Appeal from the United States District Court

for the Southern District of Mississippi

Civil Action No. 1:24-cv-00020-TBM-RPM

Hon. Taylor B. McNeel, United States District Judge

# CORRECTED BRIEF OF DEFENDANT–APPELLANT

# THOMAS L. SWAREK, SR.

Thomas L. Swarek, Sr.
Defendant–Appellant, Pro Se
11316 River Oaks Drive
Biloxi, Mississippi 39532-8187
(662) 590-2440
swarekthomas@aol.com

## CERTIFICATE OF INTERESTED PERSONS

The undersigned pro se Appellant certifies that the following persons and entities described in Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

1. First Service Bank — Plaintiff–Appellee.

2. Thomas L. Swarek, Sr. — Defendant–Appellant, Pro Se.

3. World Aircraft, Inc. — Defendant in the district-court action.

4. E. Barney Robinson III, John A. Crawford, Jr., and Paul S. Murphy, Butler Snow LLP — Counsel for Plaintiff–Appellee.

/s/ Thomas L. Swarek
Thomas L. Swarek, Sr.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument. This appeal concerns the relationship among a $50 million Main Street Lending Program loan, a ninety-five-percent participation interest, a later servicing and participation document family, an alternative default judgment, and a monetary award exceeding $54 million. Oral argument would assist the Court in addressing the contractual record, the distinct summary-judgment and default grounds, and the proper scope of remand.

# TABLE OF CONTENTS

Certificate of Interested Persons .......... 2

Statement Regarding Oral Argument .......... 3

Table of Authorities .......... 5

Introduction .......... 7

Jurisdiction and Standards of Review .......... 9

Statement of Issues Presented .......... 11

Statement of the Case .......... 13

Summary of Argument .......... 15

Argument I — FSB did not establish authority to recover the entire Main Street debt .......... 17

Argument II — Unresolved participation, servicing, funding, and document-completeness issues .......... 32

Argument III — The exact damages award was not established through a reconstructable calculation .......... 46

Argument IV — Denial of relief from default and alternative default judgment .......... 54

Conclusion .......... 61

Certificate of Compliance .......... 62

Certificate of Service .......... 63

# TABLE OF AUTHORITIES

## CASES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)....................17
Balboa Capital Corp. v. Okoji Home Visits MHT, L.L.C., No. 23-10333 (5th Cir. July 30, 2024)....................40
Celotex Corp. v. Catrett, 477 U.S. 317 (1986)....................17
CWCapital Asset Mgmt., LLC v. Chicago Props., LLC, 610 F.3d 497 (7th Cir. 2010)....................29
Fontenot v. Upjohn Co., 780 F.2d 1190 (5th Cir. 1986)....................46
Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp., No. 23-20424 (5th Cir. Apr. 25, 2024)....................42
In re OCA, Inc., 551 F.3d 359 (5th Cir. 2008)....................54
James v. Frame, 6 F.3d 307 (5th Cir. 1993)....................52
Jenkens & Gilchrist v. Groia & Co., 542 F.3d 114 (5th Cir. 2008)....................58
Lacy v. Sitel Corp., 227 F.3d 290 (5th Cir. 2000)....................10, 54, 56, 58
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)....................18
Maurer v. Independence Town, 870 F.3d 380 (5th Cir. 2017)....................36
Neil v. Wells Fargo Bank, N.A., 686 F. App'x 213 (4th Cir. 2017)....................29
Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200 (5th Cir.1975) 51, 60
Sierra Frac Sand, L.L.C. v. CDE Global Ltd., 960 F.3d 200 (5th Cir. 2020)....................23
S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489 (5th Cir. 1996)....................21
Tolan v. Cotton, 572 U.S. 650 (2014)....................18
United Artists Corp. v. Freeman, 605 F.2d 854 (5th Cir. 1979)....................52
Vais Arms, Inc. v. Vais, 383 F.3d 287 (5th Cir. 2004)....................21
Wieburg v. GTE Sw. Inc., 272 F.3d 302 (5th Cir. 2001)....................29

## STATUTES

28 U.S.C. § 1291....................9
28 U.S.C. § 1332....................9

## RULES

Fed. R. App. P. 32(a)(5), 32(a)(6), 32(a)(7)(B), 32(f)....................62
5th Cir. R. 28.2.1....................2
Fed. R. Civ. P. 17(a)....................20, 29

Fed. R. Civ. P. 19(a) ........ 20, 29, 41, 44
Fed. R. Civ. P. 54 ........ 44
Fed. R. Civ. P. 55(c) ........ 10, 54–60
Fed. R. Civ. P. 56 ........ 10, 17, 21, 25–26, 29, 33, 37–43, 46, 49, 52
Fed. R. Evid. 901(a) ........ 23

## INTRODUCTION

**1.** This appeal arises from a summary judgment and final judgment entered in favor of First Service Bank against Thomas L. Swarek, Sr. in a guaranty action involving a $50 million Main Street Lending Program loan. The judgment was entered after the District Court granted First Service Bank's motion for summary judgment, denied Mr. Swarek's motion to set aside default, and alternatively granted default judgment. The District Court later entered a final judgment/order making the judgment final as to all remaining claims, and Mr. Swarek timely appealed.

**2.** At the center of this appeal is whether the District Court erred by entering judgment for the full amount of the Main Street loan based on the record before it, where the record raised serious issues concerning First Service Bank's asserted enforcement authority, the participation structure of the Main Street transaction, the role and ownership interest of MS Facilities 2020, LLC, and whether the materials relied upon established the authority necessary to enforce the full debt against Mr. Swarek.

**3.** Mr. Swarek is proceeding pro se. He does not ask this Court to decide issues outside the record or to retry the case. He asks this Court to review the District Court's rulings based solely on the record before it under the governing standards of review, reverse or vacate the judgment, and remand for further proceedings

because the record before the District Court did not support judgment as a matter of law.

## JURISDICTION AND STANDARDS OF REVIEW

**A.**

**District Court Jurisdiction**

**4.** The District Court had subject-matter jurisdiction under 28 U.S.C. § 1332 because First Service Bank filed this civil action against Thomas L. Swarek and World Aircraft, Inc. seeking to enforce obligations exceeding $75,000, exclusive of interest and costs, and the pleadings invoked diversity jurisdiction. The action was filed in the United States District Court for the Southern District of Mississippi as Civil Action No. 1:24-cv-00020-TBM-RPM.

**B.**

**Appellate Jurisdiction**

**5.** This Court has appellate jurisdiction under 28 U.S.C. § 1291. The District Court entered judgment against Mr. Swarek on July 13, 2024. The judgment was later made final as to all remaining claims when the District Court entered its October 3, 2025 Final Judgment/Order dismissing the claims against World Aircraft, Inc. without prejudice and ordering that the prior judgment against Mr. Swarek was final. Mr. Swarek filed his Notice of Appeal on November 3, 2025. The appeal was docketed in this Court as Appeal No. 25-60618.

**C.**

**Standards of Review**

**6.** This Court reviews a grant of summary judgment de novo, applying the same standard as the District Court. Summary judgment may be affirmed only if the movant showed that there was no genuine dispute of material fact and that it was entitled to judgment as a matter of law.

**7.** This Court reviews questions of subject-matter jurisdiction and legal authority de novo.

**8.** This Court reviews the denial of a motion to set aside an entry of default under Rule 55(c) for abuse of discretion. Lacy v. Sitel Corp., 227 F.3d 290, 291–92 (5th Cir. 2000).

**9.** To the extent the District Court denied relief based on procedural default, waiver, or failure to preserve an argument, this Court reviews the legal conclusions de novo and any underlying discretionary rulings for abuse of discretion.

**10.** To the extent the District Court relied on evidentiary rulings, including objections to materials submitted by Mr. Swarek, those rulings are reviewed for abuse of discretion. However, whether the summary judgment record, viewed under Rule 56, was legally sufficient to support judgment remains subject to de novo review.

## STATEMENT OF ISSUES PRESENTED

**11.** Whether the District Court erred in granting summary judgment to First Service Bank on the full Main Street Lending Program debt where the summary-judgment record did not establish, as a matter of law, First Service Bank's authority to enforce the full debt beyond its retained participation interest.

**12.** Whether the District Court erred in granting summary judgment where the record raised genuine disputes or unresolved legal questions concerning the Main Street Lending Program participation structure, the role and ownership interest of MS Facilities 2020, LLC, the servicing authority relied upon by First Service Bank, and the documents necessary to establish enforcement authority.

**13.** Whether the District Court erred in granting summary judgment on damages where the record did not adequately resolve the amount owed, credits, payments, interest calculations, funding-date issues, and the accounting necessary to support judgment exceeding $54 million.

**14.** Whether the District Court abused its discretion in denying Mr. Swarek's motion to set aside the clerk's entry of default and alternatively granting default judgment after finding that his default was not willful because of his serious automobile accident and that continued litigation would not cause cognizable prejudice, where he moved to set aside the default the next day and presented specific defenses capable of changing the result.

**15.** Whether the District Court gave impermissibly broad effect to Mr. Swarek's limited April 4 hearing statement by treating his acknowledgment that payments had been late—made shortly after a serious automobile accident and head injury—as resolving distinct questions of enforcement authority, contractual completeness, acceleration, and the exact amount of damages.

## STATEMENT OF THE CASE

**16.** This appeal arises from a civil diversity contract action filed by First Service Bank against Thomas L. Swarek, Sr. and World Aircraft, Inc. The verified complaint and its exhibits occupy ROA.13–109 and sought enforcement of obligations arising from a Main Street Lending Program loan and related guaranties.

**17.** The Clerk entered default on February 20, 2024. [ROA.170]. Mr. Swarek moved to set the default aside the next day. Doc. 17 [ROA.171–172]. He later filed an answer [ROA.213], participated in the April 4 hearing, and opposed summary judgment.

**18.** FSB moved for summary judgment on April 11, 2024. Docs. 38, 38-1, and 39 [ROA.287–297]. Mr. Swarek opposed summary judgment on May 3. Docs. 40 and 40-1 [ROA.298–316]. FSB filed a rebuttal and a 280-page contractual package. Docs. 42, 42-1, and 42-2 [ROA.321–624]. FSB then filed objections to Mr. Swarek's opposition materials. Doc. 44 [ROA.625–634].

**19.** On July 12, 2024, the District Court granted summary judgment, denied relief from the clerk's default, and granted default judgment in the alternative. Doc. 45 [ROA.635–641]. The next day, it entered judgment for $54,928,751.83, plus costs and postjudgment interest. Doc. 47 [ROA.642].

**20.** Because claims against World Aircraft remained unresolved, FSB later moved to dismiss those claims and make the judgment final. Docs. 67–68 [ROA.1524–1531]. On October 3, 2025, the District Court made the judgment final and closed the case. Doc. 69 [ROA.1532]. Mr. Swarek filed a timely notice of appeal on November 3, 2025. Doc. 70 [ROA.1533].

## SUMMARY OF ARGUMENT

**21.** The judgment should be reversed or vacated because First Service Bank did not establish entitlement to judgment as a matter of law on the record before the District Court. The case involved a Main Street Lending Program loan in which First Service Bank allegedly retained only a limited participation interest while MS Facilities 2020, LLC acquired the overwhelming economic interest. The summary-judgment record did not resolve the authority, servicing, participation, funding, and document-completeness questions necessary to support judgment for the full debt against Mr. Swarek.

**22.** The District Court also erred by resolving the case through summary judgment and, alternatively, default judgment despite Mr. Swarek's pro se participation, his motion to set aside default, his answer, his extension request, and his submitted materials. The record should have been resolved on the merits, particularly given the magnitude of the judgment and the unresolved issues concerning authority, amount owed, credits, payments, interest, funding date, and damages.

**23.** The alternative default ground does not cure those errors. The District Court expressly found that Mr. Swarek's default was not willful and that continued litigation was not cognizable prejudice. Its denial of relief rested on the conclusion that no meritorious defense could change the result, but that conclusion

incorporated the same merits analysis challenged in Arguments I–III and treated a limited acknowledgment of late payments as resolving distinct issues of authority, contractual completeness, acceleration, and damages.

**24.** The accident and resulting impairment are also relevant to the proper treatment of Mr. Swarek's April 4 hearing statement. The District Court later found that the serious automobile accident rendered his default nonwillful. Doc. 45 at 5 [ROA.639]. Yet it treated his brief acknowledgment that payments had been late as supporting much broader conclusions concerning breach and resulting damages. Doc. 42-2 at 3 [ROA.622]; Doc. 45 at 3–4 [ROA.637–638]. That limited statement did not concede FSB's authority to recover the participant's share, completion and effectiveness of the integrated Main Street agreements, valid acceleration, or the exact judgment amount.

## ARGUMENT I.

**The District Court Erred in Granting Summary Judgment Because FSB Failed to Establish as a Matter of Law that It Possessed Authority to Recover the Entire Main Street Debt.**

**A.**

**Rule 56 required FSB to prove its entitlement to judgment for the entire debt, not merely default on payments.**

**25.** Summary judgment is proper only when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant must support factual assertions by citing particular record materials, and affidavits or declarations used to support summary judgment must be based on personal knowledge, set out facts admissible in evidence, and show competence to testify. Fed. R. Civ. P. 56(c)(1), (c)(4).

**26.** The Supreme Court has repeatedly emphasized that the movant bears the initial burden of identifying the basis for summary judgment and the record materials showing the absence of a genuine dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if a reasonable factfinder could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). At summary judgment, courts must draw reasonable inferences in favor of

the nonmovant and may not resolve factual inferences against that party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Tolan v. Cotton, 572 U.S. 650, 657 (2014).

**27.** This appeal does not turn on whether FSB could make an argument for servicing authority. It turns on whether FSB proved, as a matter of law, the complete contractual and legal authority to recover the entire $54,928,751.83 Main Street debt in its own name after selling a 95% participation interest to MS Facilities LLC. That was a distinct issue from late payments or guaranty execution.

**B.**

**FSB's opening summary-judgment motion did not prove authority to recover the SPV's 95% share.**

**28.** FSB's opening Motion for Summary Judgment relied on its memorandum, its verified complaint, and the April 11, 2024 McJunkins declaration. Doc. 38 at 1 [ROA.287]. It did not itself develop the Main Street participation structure, the SPV's 95% interest, the servicing agreement, or the complete enforcement-authority chain.

**29.** FSB's opening memorandum framed the case as a straightforward Arkansas-law guaranty/default matter. It asserted that Mr. Swarek was in default on a guaranty for a debt totaling $54,928,751.83, consisting of $51,407,862.68 in principal, $3,517,289.15 in accrued interest, and $3,600.00 in late fees. Doc. 39 at

1–2 [ROA.292–293]. It identified the Term Loan Credit Agreement, Term Note, Guaranty Agreement, and First Amendment, then argued that the note and guaranty were enforceable as written under Arkansas law. Doc. 39 at 1–4 [ROA.292–295].

**30.** The original April 11 McJunkins declaration similarly stated the amount allegedly due, but it did not attach or prove the full Main Street participation and servicing authority chain. Doc. 38-1 at 1–2 [ROA.290–291]. It did not attach the transaction-specific Participation Agreement, the Servicing Agreement, DocuSign completion certificates, the SPV's authorization, evidence of purchase funding, or evidence explaining how FSB could recover MS Facilities' 95% participated interest in FSB's own name.

**31.** Therefore, FSB's opening motion proved, at most, FSB's theory of default and damages. It did not prove the separate full-debt enforcement authority that became central after Mr. Swarek raised the 5% / 95% participation issue. Because FSB bore the ultimate burden on its affirmative contract claim and requested judgment for the entire debt, deficiencies in Mr. Swarek's opposition did not relieve FSB of establishing each fact necessary to its claimed full-debt enforcement authority.

**C.**

**Mr. Swarek timely raised the 5% / 95% participation issue before judgment.**

**32.** Mr. Swarek raised the participation issue in his summary-judgment opposition. He argued that FSB owned only a 5% portion of the $50 million loan, that the SPV/MS Facilities purchased the 95% interest, and that MS Facilities was an essential missing party. Doc. 40 at 1–2 [ROA.298–299].

**33.** That issue was material. If FSB retained only 5% but sought judgment for 100%, then FSB had to prove why it could recover the SPV's 95% participated share in its own name. The issue at least required analysis under Rule 17(a) and Rule 19(a), unless FSB first established that the operative agreements authorized it to prosecute and recover the entire claim for the benefit of all interested parties.

**D.**

**FSB supplied its full participation/servicing authority theory in rebuttal.**

**34.** FSB answered the 5% / 95% challenge in rebuttal. In Doc. 42, FSB asserted that Mr. Swarek's only defense was that FSB lacked standing to sue for 100% of the loan because it retained only 5% after selling a 95% participation interest to the SPV. Doc. 42 at 1–5 [ROA.321–325]. FSB then argued that it remained both lender and servicing agent and could sue for the entire debt. Doc. 42 at 2–17 [ROA.322–337].

**35.** The timing matters. FSB did not establish that authority chain in its opening motion. It supplied that complex theory in rebuttal through a new declaration and 280 pages of materials. Doc. 42-1 at 1–280 [ROA.340–619].

S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489 (5th Cir. 1996), and Vais Arms, Inc. v. Vais, 383 F.3d 287 (5th Cir. 2004), do not create a rule permitting a movant to establish a previously unsupported material component of its affirmative case for the first time in rebuttal without providing the nonmovant a meaningful opportunity to respond. The point here is narrower: FSB's opening motion did not establish full-debt enforcement authority. It supplied that materially developed authority theory and the supporting 280-page exhibit package in rebuttal. Before relying on that later material as the basis for final summary judgment, the District Court was required to afford Mr. Swarek a meaningful opportunity to address the new evidentiary and contractual showing. See Fed. R. Civ. P. 56(e)(1), (f). The Court instead treated the rebuttal record as conclusively resolving the disputed authority chain.

**E.**

**The District Court resolved disputed questions concerning the operative Main Street agreement by relying on an unsigned Standard Terms document.**

**36.** The District Court accepted FSB's rebuttal theory. The Court recognized that FSB retained only a 5% participation interest, but concluded that FSB nevertheless possessed contractual authority to sue for the entire Main Street debt because it remained the servicing agent under the Main Street Lending Program. In

reaching that conclusion, the Court relied on language drawn from Doc. 42-1 page 13. See Doc. 45 at 4–5 [ROA.638–639].

**37.** The document relied upon by the District Court was not a signed transaction-specific agreement. Doc. 42-1 page 13 is part of Exhibit A, titled "Participation Agreement Under the Main Street Lending Program Standard Terms and Conditions." Exhibit A is an unsigned Standard Terms document. It contains no signature page before the exhibit ends and Exhibit B begins. See Doc. 42-1 at 4, 13, 31–32 [ROA.343, 352, 370–371].

**38.** This distinction is important. The Court relied upon language contained within an unsigned Standard Terms document that, on the face of the exhibit package, contains no signature page establishing that Exhibit A itself was ever executed as the operative agreement governing this transaction.

**39.** The later transaction-specific documents contain DocuSign envelope identifiers and signature pages. But the filed exhibit pages do not include a separate certificate of completion, signer-authentication record, routing history, or full execution timeline establishing when execution and delivery were completed. More importantly, those pages belong to Exhibits C and D, not to Exhibit A, the Standard Terms document containing the provision on which the District Court relied. Doc. 42-1 at 254–269 [ROA.593–608].

**40.** These later DocuSign pages therefore do not, by themselves, establish the relationship between the unsigned Standard Terms document relied upon by the District Court and the later transaction-specific agreements. Nor do they establish, on the face of the filed exhibit pages, when the integrated agreement became effective through execution, authentication, and delivery. See Doc. 42-1 at 254–269 [ROA.593–608].

**41.** FSB may contend that the transaction-specific agreements incorporated the Standard Terms by reference. Appellant does not contend that an incorporated writing always requires a separate signature. But the record still had to establish that the executed transaction-specific agreement referred to and incorporated the particular Standard Terms upon which FSB and the District Court relied. See Sierra Frac Sand, L.L.C. v. CDE Global Ltd., 960 F.3d 200, 203–06 (5th Cir. 2020) (addressing incorporation by reference under Texas law). Here, the material question is whether the executed transaction-specific writings sufficiently identified and incorporated the precise Standard Terms contained in FSB's exhibit package.

**42.** The summary-judgment record did not conclusively establish those facts. The District Court never identified whether the exact unsigned Standard Terms document at Doc. 42-1 page 13 was the document incorporated into the later

transaction-specific agreements, whether the unsigned document was the operative version, or whether the later executed documents incorporated that precise text.

**43.** The uncertainty is reinforced by FSB's own rebuttal declaration. McJunkins distinguished between the September 17 closing materials—which included unexecuted participation, servicing, assignment, and co-lender forms—and later October 23 transaction-specific agreements. See Doc. 42-1 at 1–3 [ROA.340–342]. McJunkins described the September forms as unexecuted, and the standalone closing-package copies confirm that the forms remained materially incomplete: the Assignment omitted the assignee, effective date, and final assignment information, while the Co-Lender Agreement omitted the new lender, agreement date, and new-lender execution. Doc. 42-1 at 2 [ROA.341]. Thus, FSB's own evidence identified multiple document sets rather than one clearly executed integrated agreement. The exhibit package contained blank, incomplete, and unexecuted forms, demonstrating multiple stages of documentation rather than one undisputed executed agreement. Although McJunkins identified the exhibits and asserted FSB's servicing position, her declaration did not supply the missing execution records, identify the actual execution-and-delivery dates, or explain how the specific integrated documents authorized recovery of MS Facilities' 95% interest in FSB's own name. That distinction did not necessarily invalidate the

later agreements, but it showed that FSB's full-debt authority depended on a separate later document chain that its opening motion had not established.

**44.** Section 8.07 of the Servicing Agreement further demonstrates why those questions were material. It provides that the Servicing Agreement, Credit Agreement, Participation Agreement, and Co-Lender Agreement together constitute the entire agreement among the parties concerning the subject matter, supersede prior agreements and understandings, and become effective only upon execution and delivery by the Servicer and the SPV. Although the transaction-specific documents list October 23, 2020 agreement dates, the exhibit pages do not identify when those documents were actually executed and delivered. Doc. 42-1 at 266 [ROA.605].

**45.** Accordingly, FSB's asserted authority depended upon the completed, integrated Main Street agreement rather than upon any isolated provision contained within the unsigned Standard Terms document. Even if FSB may ultimately be able to establish its contractual authority after further evidentiary development, Rule 56 required that authority to be established without genuine dispute on the summary-judgment record before the District Court. Moreover, although interpretation of an undisputed contract may present a question of law, the District Court first had to identify the operative integrated agreement. The threshold identity, completeness, execution, delivery, and effectiveness of that integrated

agreement were not established beyond genuine dispute on the summary-judgment record before the District Court. Because the summary-judgment record did not conclusively establish execution, delivery, authentication, incorporation, effectiveness, and the relationship between the unsigned Standard Terms document and the later transaction-specific agreements, the District Court necessarily resolved disputed contractual questions rather than identifying an undisputed contractual record sufficient to satisfy Rule 56. Rule 56 does not permit the court to bridge those disputed contractual predicates through inference at summary judgment.

**46.** This conclusion is reinforced by the procedural posture of the case. FSB did not establish its full-debt enforcement authority in its opening motion. Instead, it supplied the materially developed authority theory and supporting contractual record in rebuttal. Before treating that later submission as conclusively establishing the authority chain for purposes of summary judgment, the District Court should have afforded Mr. Swarek a meaningful opportunity to address the new evidentiary and contractual showing. See Fed. R. Civ. P. 56(e)(1), (f).

**F.**

**Material contractual predicates remained unresolved.**

**47.** The summary-judgment record left unresolved whether:

- Exhibit A was ever executed;

- Exhibit A contained any signature page;
- the exact Standard Terms document at Doc. 42-1 page 13 was the document incorporated into the later transaction-specific agreements;
- the later DocuSign pages belonged to the same document relied upon by the District Court;
- when an integrated agreement became effective through execution and delivery under Section 8.07;
- any completed integrated agreement authorized FSB to recover MS Facilities' 95% participated interest.

### G.

### The hearing statement admitted lateness only and did not prove full enforcement authority.

**48.** The April 4 hearing transcript does not cure the evidentiary gap. The transcript shows that the Court asked whether the debtor was late on payments to FSB, and Mr. Swarek answered, “Not intentionally, but yes, we are.” Doc. 42-2 at 3 [ROA.622]. A separate exchange showed that FSB had “called everything” and that the note involved “50 million on Main Street.” Doc. 42-2 at 4 [ROA.623].

**49.** Even assuming the transcript and Mr. Swarek’s statements were properly considered as part of the summary-judgment record, those statements did not constitute proof of FSB’s contractual authority to recover the SPV’s 95% participated interest. The statement admitted only that payments had been late; it

did not admit FSB's ownership of or authority over the participant's share, establish the applicability of the Standard Terms, prove satisfaction of the participation agreements' conditions, establish contractual acceleration, or establish the exact amount recoverable by FSB.

**50.** Thus, the statement could support the existence of late payments, but it could not render harmless the failure to establish the identity and authority of the party entitled to obtain judgment for the full participated obligation.

**51.** The context also matters. The hearing occurred shortly after Mr. Swarek sustained a serious automobile accident and head injury, and the District Court later relied on that accident in finding that his default was not willful. Doc. 45 at 5 [ROA.639]. Appellant does not contend that the injury automatically rendered every statement inadmissible or void. But that recognized impairment reinforces why the brief, unsworn acknowledgment that payments had been late should not have been expanded into a litigation-ending admission concerning a sophisticated participation structure, FSB's authority to recover the participant's share, contractual acceleration, or the exact damages amount.

**H.**

**FSB's servicer and necessary-party arguments depend on the very authority chain it failed to prove conclusively.**

**52.** FSB will likely rely on nonbinding servicer-standing authorities such as CWCapital Asset Management, LLC v. Chicago Properties, LLC, 610 F.3d 497 (7th Cir. 2010), and Neil v. Wells Fargo Bank, N.A., 686 F. App'x 213 (4th Cir. 2017). Those cases do not answer the Rule 56 problem here. They assume competent proof of the servicer's authority. They do not relieve FSB, as the plaintiff-movant seeking affirmative judgment, from proving the operative authority documents, their execution, their incorporation, and their scope.

**53.** Rules 17 and 19 reinforce the problem. Because the record acknowledged that MS Facilities held a 95% participation interest, the determination that FSB could recover 100% in its own name and that MS Facilities was not a required party depended on FSB's asserted contractual authority to act for the participant. See Fed. R. Civ. P. 17(a), 19(a); Wieburg v. GTE Sw. Inc., 272 F.3d 302, 306–09 (5th Cir. 2001). The District Court reached those conclusions by accepting FSB's rebuttal chain rather than requiring a developed record.

**54.** At minimum, the 95% participation sale, the unsigned Standard Terms document, the widely separated and different later signature documents, the lack of a clear signature page for Exhibit A, the unexecuted closing-packet materials, and the limited hearing admission created unresolved authority questions that should not have been resolved against a pro se defendant at summary judgment.

**I.**

**The judgment should be reversed or vacated and remanded.**

**55.** Mr. Swarek does not need to prove on appeal that FSB can never recover the full debt. The narrower and stronger point is that FSB did not prove, as a matter of law, its authority to recover the SPV's 95% participated share in its own name on this summary-judgment record.

**56.** FSB's opening motion did not prove the full authority chain. Mr. Swarek raised the 5% / 95% issue before judgment. FSB supplied its full participation/servicing theory only in rebuttal. The District Court then relied on an unsigned Standard Terms document with no signature page, specifically Doc. 42-1 page 13, while the only later signature pages appeared in separate transaction-specific documents hundreds of pages later in the exhibit package. Doc. 42-1 at 4, 13, 31–32, 254–269 [ROA.343, 352, 370–371, 593–608]. That record did not establish full-debt enforcement authority beyond genuine dispute.

**57.** The summary judgment should therefore be reversed or, at minimum, vacated and remanded for further proceedings on FSB's authority to recover the entire Main Street debt in its own name, the role of MS Facilities, and the effect of the participation and servicing documents.

## ARGUMENT II

## THE DISTRICT COURT ERRED BY TREATING THE MULTI-STAGE MAIN STREET TRANSACTION AS ESTABLISHED ON A COMPLETE AND UNDISPUTED SUMMARY-JUDGMENT RECORD.

**58.** Argument I addresses the threshold question whether FSB established authority to recover the entire participated debt in its own name. Independently, summary judgment was improper because the record did not establish the Main Street transaction itself through one complete and undisputed contractual showing. FSB's own rebuttal evidence showed that the September 17 loan closing and the later October 23 participation-and-servicing transaction were separate stages involving different documents, different contractual conditions, and different parties. Yet the District Court treated that multi-document transaction as conclusively established by one provision appearing at Doc. 42-1 page 13. Doc. 45 at 4–5 [ROA.638–639].

### A.

### FSB's opening motion did not establish the Main Street participation-and-servicing transaction.

**59.** FSB's opening summary-judgment submission presented the action as a conventional guaranty case. That characterization is important because the opening motion did not ask the District Court to evaluate the integrated Main Street

participation transaction that later became the basis for rejecting Mr. Swarek's authority challenge. The motion relied on its memorandum, the Verified Complaint, and the original two-page McJunkins declaration. Docs. 38 at 1; 38-1 at 1–2 [ROA.287, 290–291]. The memorandum identified the Credit Agreement, Term Note, Guaranty, and First Amendment and argued that those instruments were enforceable under Arkansas law. Doc. 39 at 1–4 [ROA.292–295]. It did not establish the later Main Street participation-and-servicing transaction as a completed integrated agreement.

**60.** Mr. Swarek's opposition raised the omitted 5%/95% participation structure and the role of MS Facilities. Doc. 40 at 1–2 [ROA.298–299]. FSB then supplied in rebuttal the developed theory that it had sold 95% to the SPV but remained entitled, as lender and servicer, to recover the entire debt. Doc. 42 at 1–11 [ROA.321–331].

**61.** FSB supported that theory with a new declaration and a 280-page exhibit containing several distinct document families: Standard Terms, the September closing packet, a later transaction-specific Participation Agreement, and a later Servicing Agreement. Doc. 42-1 at 1–3 [ROA.340–342]. Thus, the Rule 56 question in Argument II is not simply whether FSB presented documents. It is whether those distinct documents established the completed Main Street transaction without genuine dispute.

**B.**

**FSB's own rebuttal evidence showed that the September closing packet was not the completed Main Street transaction.**

**62.** McJunkins divided the transaction into separate document families. She identified Exhibit A as the Main Street Standard Terms, Exhibit B as the September 17 Credit Agreement and closing packet, Exhibit C as the October 23 transaction-specific Participation Agreement, and Exhibit D as the October 23 Servicing Agreement. Doc. 42-1 at 1–3 [ROA.340–342].

**63.** Her description of the September packet was especially important. She stated that it contained:

- a partially incomplete Term Note;
- unexecuted Borrower Certifications and Covenants;
- an unexecuted transaction-specific Participation Agreement;
- Standard Terms;
- an unexecuted Servicing Agreement;
- a blank Assignment and Assumption; and
- an unexecuted Co-Lender Agreement.

Doc. 42-1 at 2 [ROA.341].

**64.** FSB itself repeated those facts in rebuttal. It emphasized that Thomas initialed pages containing incomplete, blank, and unexecuted Main Street forms,

including an unexecuted participation agreement, unexecuted servicing agreement, blank assignment, and unexecuted Co-Lender Agreement. Doc. 42 at 10 [ROA.330]. Those facts did not establish a single completed September transaction. They showed the opposite: the September loan closing packet included preliminary or incomplete Main Street documents, while the transaction-specific participation and servicing agreements appeared later. Mr. Swarek's initials may show that the September forms were presented during closing, but initials on preliminary or incomplete forms did not themselves establish that the later execution, delivery, assignment, registration, funding, and effectiveness conditions had been satisfied.

**65.** The Credit Agreement itself recognized that distinction. It defined the “Funding Date” as the date on which the lender actually made the Term Loan available in same-day funds. Doc. 42-1 at 44 [ROA.383]. It also stated that the loan would be made on the Funding Date, not necessarily on the nominal September 17 Closing Date. Id. at 54–55 [ROA.393–394].

**66.** The Credit Agreement’s conditions to funding further required receipt of Main Street documentation, including the participation agreement, servicing agreement, Assignment-in-Blank, Co-Lender Agreement, and related executed documents. Id. at 59–62 [ROA.398–401]. The September closing packet therefore

could not be treated automatically as proof that the entire participation transaction was complete and effective on September 17.

**C.**

**The later signed agreements did not eliminate the need to establish satisfaction of the broader contractual conditions.**

**67.** FSB did later produce signed October 23 transaction-specific participation and servicing agreements. The transaction-specific Participation Agreement identified FSB as Seller, MS Facilities LLC as Buyer, a 95% participated percentage, a $47.5 million purchase amount, and a $50 million aggregate tranche amount. Doc. 42-1 at 254–258 [ROA.593–597]. The Servicing Agreement likewise identified FSB as Servicer, MS Facilities LLC as SPV, and the same $47.5 million purchase amount. Id. at 259–269 [ROA.598–608].

**68.** Appellant therefore does not contend that electronic signatures, transaction-specific agreements, or incorporation by reference are categorically invalid. Nor does Appellant contend that every summary-judgment exhibit had to be presented in its final trial-admissible form. See Maurer v. Independence Town, 870 F.3d 380, 384–86 (5th Cir. 2017). The narrower defect was substantive rather than formal: the record still had to establish which writings governed, how the separate writings fit together, whether the stated conditions were satisfied, and when the integrated participation transaction became effective. Once FSB relied

upon the participation and servicing documents to justify recovery of the SPV's 95% share, those documents became material components of FSB's affirmative Rule 56 showing; proof of default did not eliminate FSB's obligation to prove entitlement to the full recovery requested.

**69.** The Standard Terms stated that the operative Participation Agreement consisted of the Standard Terms as modified and supplemented by the transaction-specific terms. Doc. 42-1 at 4 [ROA.343]. They further provided that the transaction-specific terms controlled in the event of inconsistency. Id.

**70.** Section 3.1 made the effectiveness of the Participation Agreement, the SPV’s obligation to pay the purchase price, and FSB’s obligation to sell the participation subject to multiple conditions precedent. Those conditions included receipt of:

- executed transaction-specific terms;
- executed lender registration and transaction-specific certifications;
- executed borrower certifications;
- an executed Servicing Agreement;
- an executed Assignment-in-Blank;
- executed lender wire instructions; and
- because the transaction was bilateral, an executed Co-Lender Agreement.

Doc. 42-1 at 13–14 [ROA.352–353].

**71.** Those were not collateral technicalities. Under Section 2.1, the participation sale occurred “upon the payment of the Purchase Price,” and Section 3.1 made that payment obligation conditional upon the required documents. Id. at 13–14 [ROA.352–353]. The Standard Terms also defined the “Purchase Price” as the amount payable by Buyer to Seller on the Agreement Date for the participation. Id. at 10 [ROA.349]. The absence of direct payment evidence does not independently prove that payment never occurred. It matters because the contractual provisions tied transfer and effectiveness to payment and the satisfaction of the stated contractual conditions that FSB was required to establish as part of its affirmative Rule 56 showing.

**72.** The later signed Participation and Servicing Agreements did not themselves show satisfaction of every listed condition. Doc. 42-1 contained the September forms that McJunkins described as incomplete, blank, or unexecuted, but the summary-judgment package reviewed did not identify a completed replacement Assignment-in-Blank naming MS Facilities as assignee, a completed replacement Co-Lender Agreement naming and executed by the new lender, a separate completion record for all required certifications, executed wire instructions, or direct proof that the stated $47.5 million purchase price was paid.

**73.** The located September Assignment and Co-Lender forms were not wholly devoid of signatures, but they remained materially incomplete. The Assignment omitted the assignee, operative dates, final assignment information, Administrative Agent acceptance, and register completion. The Co-Lender Agreement omitted the new lender, agreement date, and new-lender execution. The issue was therefore not merely whether signatures appeared somewhere. It was whether the required documents had been completed, delivered, accepted, recorded where required, and made effective.

**74.** Section 8.07 of the Servicing Agreement reinforces that point. It provided that the Servicing Agreement, Credit Agreement, Participation Agreement, and Co-Lender Agreement constituted the entire contract and that the Servicing Agreement became effective upon execution and delivery by the Servicer and SPV. Doc. 42-1 at 266 [ROA.605].

**75.** Moreover, the various agreements did not all apply the same governing law. The Participation Agreement selected New York law. Id. at 29 [ROA.368]. The Servicing Agreement also selected New York law and New York courts. Id. at 266–267 [ROA.605–606]. The Credit Agreement generally selected Arkansas law. Those provisions further demonstrate that the transaction involved distinct but integrated documents whose identity, relationship, and effectiveness had to be

established before the Court could treat the entire structure as one undisputed contract.

**76.** The Fifth Circuit's reasoning in Balboa Capital Corp. v. Okoji Home Visits MHT, L.L.C. reinforces the distinction between the existence of separate writings and competent proof that those writings form one operative contractual package. There, the Court rejected an attempt to splice separate documents together as unified contractual or business records where the evidence did not adequately establish their linkage and interplay. No. 23-10333, slip op. at 18–24 (5th Cir. July 30, 2024). Balboa does not make unsigned or electronic documents categorically unusable. It confirms the narrower Rule 56 point that a court may not supply a disputed linkage among separate documents when that linkage provides material contractual content.

**77.** Although interpretation of an undisputed contract may present a legal question, the threshold identity, completeness, and effectiveness of the operative integrated contract were not established beyond genuine dispute on this record. The unresolved material predicates included which documents constituted the operative integrated transaction, whether the required Assignment and Co-Lender documents were completed and effective, whether the stated conditions to effectiveness and transfer were satisfied, when participation funding occurred, and

whether the completed agreement authorized FSB to recover the SPV's 95% participated interest in its own name.

**D.**

**The District Court relied on one provision without addressing the rest of the integrated transaction.**

**78.** The District Court recognized that FSB retained only 5% but held that FSB could recover the full amount because it served as agent and held title for the SPV’s benefit. Doc. 45 at 4–5 [ROA.638–639]. The Court cited Doc. 42-1 page 13 for that conclusion.

**79.** That provision was conditional. It described the seller’s obligations upon effectiveness of the Agreement and payment of the Purchase Price. Doc. 42-1 at 13–14 [ROA.352–353]. Yet the order did not address the same section’s conditions precedent, the incomplete September forms, the separate October agreements, the Assignment and Co-Lender requirements, the purchase-price payment, or Section 8.07’s integrated-agreement and execution-and-delivery language.

**80.** The Court therefore treated one provision as dispositive before the record had established the completed integrated agreement of which that provision was allegedly a part. The same unresolved predicate controlled its Rule 19 ruling: unless FSB first established its contractual authority to prosecute and recover the

participant's share, the Court could not assume away the consequences of MS Facilities' acknowledged 95% interest.

**E.**

**The materially developed rebuttal showing should not have been treated as conclusive without a meaningful opportunity to respond.**

**81.** FSB's 19-page rebuttal and 280-page exhibit package introduced the developed participation, servicing, agency, elevation, and integrated-contract theory after Thomas had filed his response. Docs. 42 and 42-1 [ROA.321–619]. FSB then filed Doc. 44 objecting to virtually all of Thomas's response materials on authentication, hearsay, relevance, and integration grounds. Doc. 44 at 1–8 [ROA.625–632].

**82.** Appellant does not contend that reply evidence is categorically prohibited. But when new evidence or arguments first appear in reply, the District Court must either provide the opposing party an adequate opportunity to respond or decline to rely upon the new material. The problem was not that FSB merely answered an argument raised in opposition. Rather, FSB supplied the new declaration and extensive agreement family necessary to establish a material component absent from its opening Rule 56 showing, and the District Court relied upon that expanded record dispositively. Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp., No. 23-20424, slip op. at 5–6 (5th Cir. Apr. 25, 2024). Here,

FSB's rebuttal supplied the developed participation-and-servicing theory, a new declaration, and the 280-page contractual package upon which the District Court relied. Docs. 42 and 42-1 [ROA.321–619]. The Court treated that materially developed submission as conclusively resolving the transaction without affording Mr. Swarek a meaningful opportunity to address the new declaration, document family, and contractual theory. See Fed. R. Civ. P. 56(e)(1), (f).

**83.** That concern is especially significant here because FSB simultaneously attacked Thomas's own materials as unauthenticated and inadmissible while supplying the evidence necessary to complete its own original motion only in rebuttal. The Court then treated that late-developed record as dispositive.

**F.**

**The error was material and requires reversal or vacatur.**

**84.** The error cannot be dismissed as harmless merely because Thomas acknowledged that payments were late. The hearing transcript shows only that he said payments were late and that FSB had called the note due. Doc. 42-2 at 3–4 [ROA.622–623]. He did not admit:

- that FSB had established every condition of the participation sale;
- that the $47.5 million purchase price had been paid;
- that the incomplete assignment and Co-Lender documents had become effective;

- that FSB could recover the SPV's 95% interest in its own name;
- that MS Facilities was unnecessary under Rule 19;
- or that FSB's damages calculation was correct.

**85.** Default and amount are not the same as entitlement. A payment default may establish that an obligation was breached, but it does not independently establish which party may recover 100% of a participated obligation or whether the integrated transaction supporting that recovery became effective as required.

**86.** The distinction mattered because the District Court entered judgment against Thomas for $54,928,751.83, plus costs and post-judgment interest. Doc. 47 at 1 [ROA.642]. That judgment later became final under Rule 54. Doc. 69 at 1 [ROA.1532].

**87.** FSB may ultimately be able to establish that the participation transaction was completed, funded, and effective and that the resulting agreements authorized it to recover the entire debt. But Rule 56 required those material predicates to be established without genuine dispute before judgment—not reconstructed through appellate inference after judgment.

**88.** This Court should therefore reverse or vacate the summary judgment and remand for further proceedings because the District Court entered judgment on a materially incomplete transactional showing and relied upon a materially developed rebuttal record without adequate Rule 56 safeguards. That disposition

would not invalidate the Main Street transaction, reject electronic signatures, or decide that MS Facilities was automatically indispensable. It would require only that FSB establish the complete contractual and factual basis for the relief it seeks before obtaining judgment as a matter of law.

## ARGUMENT III

**THE $54,928,751.83 DAMAGES JUDGMENT CANNOT STAND BECAUSE FSB DID NOT ESTABLISH THE EXACT AMOUNT OWED THROUGH COMPETENT, RECORD-SUPPORTED SUMMARY-JUDGMENT EVIDENCE.**

**A.**

**FSB bore the burden of proving the exact monetary relief it requested.**

**89.** Even if FSB established its authority to pursue the obligation, it still bore the burden as plaintiff-movant to establish every element of the affirmative relief requested, including the exact amount of the monetary judgment. See Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986) (a party seeking summary judgment on a claim for which it bears the burden of proof must establish all essential elements beyond genuine dispute). The absence of a competing payoff calculation from Mr. Swarek did not relieve FSB of proving its own figures through evidence from which the amount could be verified.

**90.** Rule 56 required more than proof that payments had been late or that some balance remained outstanding. FSB sought judgment for the precise amount of $54,928,751.83. The record therefore had to establish the principal balance, accrued interest, applicable dates and rates, payment credits, capitalization, and fees necessary to produce that amount without speculation.

**B.**

**The opening declaration stated ultimate totals without disclosing the underlying calculation.**

**91.** FSB's principal damages evidence was the two-page declaration of Darla McJunkins. She stated generally that her testimony was based on personal knowledge and/or review of FSB business records. Doc. 38-1 at 1 [ROA.290]. She did not identify the particular ledger, account history, payoff worksheet, rate schedule, capitalization record, or late-fee calculation reviewed.

**92.** The declaration then stated that, as of April 9, 2024, Mr. Swarek allegedly owed $51,407,862.68 in principal, $3,517,289.15 in accrued interest, and $3,600 in late fees, totaling $54,928,751.83. Doc. 38-1 at 1–2 [ROA.290–291]. Those figures supplied the result but not the account-level calculation by which the result could be independently checked.

**93.** FSB's memorandum repeated the same figures and cited the McJunkins declaration and the complaint's prayer for relief. Doc. 39 at 1–2 [ROA.292–293]. It did not identify any separate ledger, payoff statement, payment-application history, interest worksheet, or mathematical summary establishing how the asserted amount was derived.

**94.** The amount changed materially even during the litigation. FSB's February 20 declaration asserted $54,347,071.07, consisting of $51,407,862.68 in principal,

$2,936,408.39 in accrued interest, and $2,800 in late fees. [ROA.175–176]. Its April 9 declaration kept principal unchanged but increased interest to $3,517,289.15 and late fees to $3,600, producing the $54,928,751.83 judgment figure. Doc. 38-1 at 1–2 [ROA.290–291]. The $581,680.76 increase may be explainable, but the opening summary-judgment materials did not disclose the accrual and fee calculations needed to verify it.

**95.** The District Court's order also recited an earlier November 2023 accelerated figure of $53,275,468.59 before identifying the later $54,928,751.83 request. Doc. 45 at 1–7 [ROA.635–641]. That progression does not prove that the balance was wrong, but it further demonstrates that the exact award depended on changing interest and fee calculations that the order itself did not reconstruct.

**C.**

**The increase above the $50 million face amount made supporting calculations material.**

**96.** The need for supporting calculations was apparent from FSB's own submission. Its memorandum described the transaction as a $50 million Term Loan Credit Agreement and a $50 million Term Note. Doc. 39 at 1–2 [ROA.292–293]. Yet the declaration asserted $51,407,862.68 in principal alone—$1,407,862.68 more than the stated face amount of the loan.

**97.** That difference does not itself establish an improper charge. It may ultimately reflect capitalized interest, payment-in-kind treatment, an amendment, another contractually authorized accounting mechanism, or some combination of those matters. But FSB's affirmative Rule 56 showing needed to identify the governing provision, dates, rates, and account entries that converted the original $50 million obligation into the claimed principal balance.

**98.** Without that calculation, neither the District Court nor this Court could determine from the opening submission whether the asserted principal reflected properly capitalized amounts, unapplied or misapplied payments, accrued interest classified as principal, or another accounting treatment. A conclusory total does not become independently verifiable merely because it is repeated in a declaration and memorandum.

**D.**

**Mr. Swarek's limited hearing statement did not establish legal default, collection authority, or the exact damages amount.**

**99.** Mr. Swarek's limited hearing statement did not supply the missing damages calculation. He acknowledged that payments had been late. Doc. 42-2 at 3 [ROA.622]. He did not admit that FSB had established each contractual prerequisite to collection, that FSB possessed authority to recover the entire

participated obligation, that acceleration was contractually effective, or that the April 2024 principal, interest, fees, and total were accurate.

**100.** An acknowledgment concerning payment timing is not a calculation of damages. It did not establish the interest-accrual period, the rate applied during each period, capitalization entries, the application of prior payments or credits, or the basis for the $3,600 late-fee figure.

**E.**

**The transaction's timing and capitalization mechanics made account-level proof material.**

**101.** The Credit Agreement distinguished the stated agreement date from the "Funding Date" and provided that the loan would be made on that Funding Date. Doc. 42-1 at 44, 54 [ROA.383, 393]. Those timing provisions did not themselves prove that FSB's calculation was wrong. They showed why the exact balance depended on date-specific accounting rather than a bare bottom-line declaration.

**102.** Where principal, accrued interest, capitalization, and payment credits may change over time, the exact judgment amount depends on the dates and entries used in the calculation. FSB's opening submission did not identify those account-level inputs or provide a schedule showing how the asserted April 9, 2024 balance was reached.

**F. The District Court adopted the exact total without independently explaining the calculation.**

**103.** The District Court's seven-page order granted FSB summary judgment and also granted default judgment. Doc. 45 at 1–7 [ROA.635–641]. The separate judgment then expressly awarded $54,928,751.83 in the paragraph granting default judgment. Doc. 47 at 1 [ROA.642]. The order addressed liability and FSB's asserted enforcement authority, but it did not independently reconcile the original $50 million face amount with the asserted principal, accrued interest, late fees, payments, or credits.

**104.** Proof that payments were late, or that some amount remained unpaid, did not establish the arithmetic of the exact judgment. The amount component required its own evidentiary foundation.

**G.**

**The alternative default-judgment ruling depended on the same unresolved damages showing.**

**105.** The judgment's express $54,928,751.83 award appears in its default-judgment paragraph. Doc. 47 at 1 [ROA.642]. But default did not admit the amount of damages merely because FSB alleged a specific figure. See Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). The exact award still required competent proof, particularly where the requested amount

included principal exceeding the note's face amount, accrued interest, and fees whose calculation was not shown in the opening materials.

**106.** Neither the order nor the judgment identifies a separate damages hearing, ledger-based computation, or independent accounting analysis supporting the alternative award. A hearing is not invariably required when damages are liquidated or capable of mathematical calculation from detailed record evidence. See United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979); James v. Frame, 6 F.3d 307, 310 (5th Cir. 1993). But those authorities reinforce the central point here: the record needed to disclose the arithmetic or detailed evidentiary basis from which the exact amount could be calculated. The same deficiency therefore affected both the summary-judgment and alternative-default grounds.

**H.**

**At minimum, the amount component should be vacated and remanded for a record-supported calculation.**

**107.** FSB may ultimately be able to prove that $54,928,751.83—or another amount—was due under the governing agreements. But Rule 56 required the amount awarded to be established through the record before judgment, not reconstructed by inference after judgment.

**108.** The Court should therefore vacate the amount component of the judgment and remand for a record-supported calculation of principal, interest,

payment credits, capitalization, and fees. That limited relief would not decide that no debt existed, that payments were not late, or that FSB's ultimate calculation must be rejected. It would require only that the exact monetary award be supported by evidence sufficient for meaningful verification.

## ARGUMENT IV

**THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING RELIEF FROM DEFAULT AFTER FINDING NO WILLFULNESS AND NO COGNIZABLE PREJUDICE, BECAUSE ITS SOLE ADVERSE FACTOR RESTED ON AN OVERBROAD REJECTION OF SPECIFIC, OUTCOME-CHANGING DEFENSES.**

**A.**

**Rule 55(c) required a totality-of-the-circumstances assessment favoring adjudication on the merits.**

**109.** A district court deciding whether to set aside an entry of default considers whether the default was willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presented a meritorious defense. The inquiry is equitable and may also consider prompt corrective action, good faith, and the strong policy favoring decisions on the merits. See Lacy v. Sitel Corp., 227 F.3d 290, 292–93 (5th Cir. 2000); In re OCA, Inc., 551 F.3d 359, 370–71 (5th Cir. 2008).

**110.** Appellant does not contend that favorable findings on willfulness and prejudice automatically compelled relief. Fifth Circuit authority permits denial when the proposed defense is merely conclusory or incapable of changing the result. The question here is narrower: whether the District Court evaluated the

meritorious-defense factor on an accurate understanding of what Mr. Swarek had and had not admitted and of the specific defenses appearing in the record.

**B.**

**The District Court expressly resolved willfulness and prejudice in Mr. Swarek's favor.**

**111.** The District Court found that Mr. Swarek's default "was not willful" because he presented evidence of a serious automobile accident shortly before the answer deadline. Doc. 45 at 5 [ROA.639]. That finding rejects culpable or strategic default and must be given full weight in the Rule 55(c) balance.

**112.** The Court also rejected FSB's asserted prejudice, explaining that continuing to litigate the action was not the type of prejudice contemplated by Rule 55(c). Doc. 45 at 5 [ROA.639]. Thus, the Court found neither willful default nor cognizable prejudice.

**113.** The chronology further supports good-faith corrective participation. The Clerk entered default on February 20, 2024 [ROA.170], and Mr. Swarek moved to set it aside the next day. Doc. 17 [ROA.171–172]. He later filed an answer [ROA.213], participated in the April 4 hearing, and opposed summary judgment. Docs. 40 and 40-1 [ROA.298–316]. This sequence does not resemble abandonment. Prompt corrective action is an additional equitable consideration under the totality analysis, not a substitute for a meritorious defense.

**C.**

**The denial rested on the Court's conclusion that no meritorious defense could change the result.**

**114.** After resolving willfulness and prejudice for Mr. Swarek, the District Court denied relief because it concluded that he had not presented a meritorious defense and that there was no possibility of a different result after trial. Doc. 45 at 5–6 [ROA.639–640]. That conclusion became the decisive adverse factor.

**115.** A meritorious defense need not be proven conclusively at the Rule 55(c) stage. The relevant inquiry is whether the defendant has offered definite factual allegations that, if proven, would constitute a defense. Lacy, 227 F.3d at 293. Appellant therefore does not rely on a general denial or on pro se status. He relies on specific defenses tied to identified record documents and legal consequences.

**D.**

**The limited acknowledgment of late payments did not eliminate the distinct defenses developed in Arguments I–III.**

**116.** The hearing excerpt showed only that Mr. Swarek acknowledged payments had been late. Doc. 42-2 at 3 [ROA.622]. That statement was made shortly after the serious automobile accident and head injury upon which the District Court itself relied in finding that his default was not willful. Doc. 45 at 5 [ROA.639]. The District Court nevertheless described him as admitting the

contract, the payment obligation, breach, and resulting damages. Doc. 45 at 3–4 [ROA.637–638]. That broader characterization did not resolve whether FSB possessed authority to recover the participant's share, whether the integrated Main Street transaction had been completed and made effective as FSB asserted, whether acceleration satisfied every contractual predicate, or whether the exact $54,928,751.83 figure was correct.

**117.** Argument I identifies a specific defense concerning FSB's authority and proper capacity to recover the participant's ninety-five-percent share. Success on that defense could alter who may recover and the scope of relief.

**118.** Argument II identifies specific defenses concerning the identity, completeness, execution, delivery, incorporation, and effectiveness of the Main Street participation and servicing documents. Success on those issues could alter the contractual predicate for full-debt enforcement.

**119.** Argument III identifies a specific defense to the precise monetary award: FSB stated changing bottom-line totals without disclosing a calculation permitting verification of principal, interest, capitalization, credits, and fees. Success on that defense could require vacatur or recalculation of the judgment amount.

**120.** These are not conclusory assertions that "nothing is owed." Each identifies a legal and factual issue capable of producing a result different from the default judgment. FSB may argue that the meritorious-defense showing must be

judged only from what Mr. Swarek presented when he first moved to set aside default. But Doc. 45 expressly stated that, "[f]or the reasons discussed previously in this Order," Mr. Swarek had not presented a meritorious defense. Doc. 45 at 6 [ROA.640]. The Court therefore incorporated its preceding summary-judgment analysis and the broader First ROA record into the Rule 55(c) ruling. The appellate question is whether that incorporated analysis rested on an overbroad reading of the late-payment acknowledgment and failed to account for record-supported defenses actually before the Court by the time it ruled.

**E.**

**The strongest adverse cases are distinguishable because they involved unsupported or outcome-irrelevant defenses.**

**121.** FSB may rely on Lacy, Jenkens & Gilchrist v. Groia & Co., and related cases recognizing that Rule 55(c) relief may be denied when a proposed defense is conclusory, unsupported, legally irrelevant, or contradicted by the record. Appellant does not dispute that principle. The distinction is factual specificity and outcome capability: the defenses here identify particular contractual provisions, record documents, participation interests, and damages figures and explain how success on any one could alter the proper claimant, the enforceable contractual chain, or the amount of judgment.

**122.** Nor does Appellant rely solely on the size of the judgment, his pro se status, or the preference for merits adjudication. Those considerations reinforce the equitable setting, but the core error is the rejection of specific defenses on the mistaken premise that acknowledging late payments conceded every issue necessary to FSB's judgment. Because the Rule 55(c) ruling expressly incorporated the preceding merits analysis, that error was not harmless unless the incorporated analysis was itself legally and factually sound.

**F.**

**The alternative default judgment cannot independently sustain the same judgment if the Rule 55(c) analysis was materially flawed.**

**123.** The District Court used the default ruling as an alternative ground for the same judgment. Doc. 45 at 1, 5–6 [ROA.635, 639–640]; Doc. 47 at 1 [ROA.642]. But the default ground was not independent in substance: Doc. 45 expressly incorporated "the reasons discussed previously" in its summary-judgment analysis into the meritorious-defense ruling. Doc. 45 at 6 [ROA.640]. If the legal or record errors identified in Arguments I–III infected that incorporated analysis, the alternative default ground cannot become independently sufficient merely by repeating those same disputed premises.

**124.** The alternative default award also remained subject to the independent requirement that the exact damages be established by competent, calculable

evidence. For the reasons stated in Argument III, default did not itself establish the precise $54,928,751.83 amount. See Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).

**G.**

**Relief requested.**

**125.** The Court should vacate the alternative default judgment and remand for adjudication on the merits. That relief would not decide that Mr. Swarek must prevail on the defenses identified in Arguments I–III. It would require only that those specific defenses be evaluated through the merits process rather than eliminated by treating a limited acknowledgment of late payments as a concession of authority, contractual completeness, acceleration, and exact damages.

## CONCLUSION

**126.** For the foregoing reasons, Appellant respectfully requests that this Court reverse or vacate the summary judgment and alternative default judgment and remand for further proceedings. At minimum, the Court should vacate the monetary award and remand for a record-supported calculation of principal, interest, credits, capitalization, and fees. The Court should also vacate the denial of relief from the clerk's default so that the specific defenses identified in this brief may be adjudicated on the merits.

**127.** Appellant does not ask this Court in this appeal to decide the separately noticed Rule 60(b) appeal or to rely on materials outside the official record for Appeal No. 25-60618.

Respectfully submitted this 15th day of July 2026.

/s/ Thomas L. Swarek
Thomas L. Swarek, Sr. — Pro Se
11316 River Oaks Drive
Biloxi, Mississippi 39532-8187
(662) 590-2440
swarekthomas@aol.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains approximately 9,565 words, excluding the portions exempted by Rule 32(f).

This brief complies with the typeface and type-style requirements of Rules 32(a)(5) and 32(a)(6) because it has been prepared in 14-point Times New Roman, a proportionally spaced typeface.

/s/ Thomas L. Swarek
Thomas L. Swarek, Sr.

## CERTIFICATE OF SERVICE

I certify that on July 15, 2026, I submitted this corrected brief to the United States Court of Appeals for the Fifth Circuit through the Court's designated pro se email mailbox and served a copy on all counsel of record by email in accordance with the Federal Rules of Appellate Procedure and the Fifth Circuit's procedures for pro se litigants.

/s/ Thomas L. Swarek
Thomas L. Swarek, Sr.